IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20–cr-40105-SMY |
| | ) |
| | ) |
| MICHAEL FERRIS, | ) |
| | ) |
| Defendant. | ) |

# ORDER

**YANDLE, District Judge:**

Defendant Michael Ferris is charged in the Third Superseding Indictment with six counts of sexual exploitation of a child or attempt to do so (Counts 1, 7, 10, 13, 20, and 24), eight counts of interstate extortion (Counts 3, 5, 8, 11, 14, 16, 18, and 22), eight counts of cyberstalking (Counts 4, 6, 9, 12, 15, 17, 19, and 23), two counts of distribution of child pornography (Counts 2 and 21), and one count of possession of child pornography (Count 25) (Doc. 67). He moves to suppress his identification in a photo lineup by alleged victim K.D. (Doc. 72). The Government opposes the Motion (Doc. 83). For the following reasons, Ferris' Motion to Suppress is **DENIED**.

## Factual Findings

The Court makes the following factual findings from the evidence submitted with the parties' briefs[1]: On July 6, 2022, Homeland Security Investigations ("HSI") Forensic Interview

---

[1] The Court finds that an evidentiary hearing is unnecessary as there are no disputed issues of material fact relevant to Ferris' motion. *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011) (The defendant bears the burden of both identifying a definite disputed factual issue and demonstrating its materiality). The interview of K.D., including her identification of Ferris, is audio and video recorded and there are no allegations that the recording is inaccurate or incomplete. The photo array and instructions are also documented and their authentication is not in dispute.

Specialist Rachel McConnell conducted a forensic interview of K.D. for approximately 2 hours and 11 minutes during which she reported the following: K.D. received unsolicited Facebook friend requests from "Christine James" and "Sammy Gray" in April 2020. She was 15 years old at the time and living in Maine.

One day, K.D. accidentally called "Sammy Gray" and a man (who she later identified as Ferris) answered the phone. He claimed to be Sammy Gray's brother, but K.D. suspected he was lying. They started talking and eventually K.D. pieced together that he was the real person behind the "Sammy Gray" and "Christine James" accounts. Ferris told K.D. that he was in his late 30s or early 40s. K.D. and Ferris continued messaging and video chatting on Facebook using the "Sammy Gray" and "Christine James" accounts. They also started messaging and video chatting on Skype. Ferris used the Skype profile "Grizzly Bear" which is what K.D. called him. She never knew his real name. K.D.'s online relationship with Ferris lasted for several months. They spent hours each day messaging and video chatting. K.D. saw Ferris' face during their video chats. She described him as skinny with dark brown eyes. Ferris had long hair when she first saw him, but it got shorter over the course of their relationship. He also wore hats and glasses and had a "scruff" beard that he would shave sometimes.

During the last 12 minutes of the interview, HSI Agent Eric Tracy conducted a photo-array line-up with K.D. while McConnell sat in the room on the floor. The array was created by HSI Agent Eric Bowers using Ferris' driver's license photo and HSI's database of filler photos. Before presenting the photo array to K.D., Agent Tracy read instructions from a form, including the following:

> While viewing the photographs, remember that hairstyles, beards, or mustaches can change; and pay no attention to differences in the style of the photographs or to whether they are in color or black and white.

Agent Tracy did not read the following, which was also on the form:

> Making a false statement to a federal agent is a crime; it is important to clear innocent persons; the investigation will continue even if she does not identify a person in the lineup; and not to discuss this identification procedure with other witnesses or the media.

Agent Tracy placed the photo array in front of K.D. The photo array contained photographs of six male faces. The photographs were of varying quality, and some were more blurred or pixilated than others. The men appeared to be similar in skin complexion and had different hair lengths and facial hair. Ferris's photograph was in the third position. Ferris has long hair and a beard in the photograph. None of the men in the photo array were wearing glasses. The agents did not speak while K.D. reviewed the photographs. Seconds later, K.D. identified Ferris' as "Grizzly" from the photo array. When asked about her level of certainty, K.D. responded, "I am 100% certain… I draw faces." She noted her identification on the form, and wrote, "The face shape is the same and so is the nose, eyes, and hair color."

## Discussion

Ferris argues that the photo identification should be suppressed because the photo array shown to K.D. was impermissibly suggestive and unnecessary. Specifically, Ferris asserts that the photos did not match K.D.'s description, the agent did not read K.D. all the pre-printed line-up instructions, and the agents did not utilize a double-blind procedure. Ferris also argues that K.D.'s identification of him is unreliable.

A witness' identification violates a defendant's right to due process when the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Williams,* 522 F.3d 809, 810 (7th Cir. 2008) (quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)). Courts employ a two-step analysis in deciding whether an eyewitness' identification violates a defendant's due process rights and

must be suppressed. The Court must first determine whether the identification procedure employed was both suggestive and unnecessary. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018). If the answer is no, the inquiry ends there. If the Court finds that the identification resulted from an unduly suggestive procedure, it must then determine whether, under the totality of the circumstances, the identification was reliable despite the suggestive procedures. *United States v. Vines*, 9 F.4th 500, 506–07 (7th Cir. 2021).

In deciding whether an identification procedure was unnecessarily suggestive, courts look to "the manner in which the witness was shown the suspect's likeness, reserving criticism for procedures that have been orchestrated to yield the identification of one particular suspect." *United States v. Jones*, 454 F.3d 642, 649 (7th Cir. 2006) (internal citations omitted). Suggestive procedures typically cross the line when they involve the repeated presentation of only one suspect by the police to a witness, or a lineup in which the suspect is clearly distinguishable from the other persons. *Id.* Agents conducting lineups are required only to make reasonable efforts under the circumstances to conduct a fair and balanced presentation. United States v. Traeger, 289 F.3d 461, 474 (7th Cir. 2002). They are not required to search for identical twins in age, height, weight, or facial features. *Id.*

In this case, HSI arranged a six-photo array with photographs of six men with similar skin complexions. The men have similar facial features, various hair lengths, and facial hair in the form of beards, goatees, and a mustache. All the men also appear to be of similar weight. Each man fits K.D.'s description of Ferris who she stated had long hair when they first video chatted which grew shorter over time. K.D. also described Ferris as having a scruff beard which he would sometimes shave.

Ferris notes that K.D. described the man she video chatted with as having a beard, long hair, brown eyes, and glasses and contends the photo array did not match K.D.'s verbal description of the man because none of the photographs depict a person wearing glasses and his photo is the only one depicting a person with both a beard and long hair. He also argues that the photos are of varying quality – with his photo being the clearest.

The Court does not find that the presentation of the photo array was suggestive or that there is anything notably different or suggestive about Ferris' photographs compared to the other five photographs in the array. The slight differences in quality of photographs are insignificant. And although the backgrounds do not all look alike, they do not have to. *United States v. Carter*, 410 F.3d 942, 949 (7th Cir. 2005); *United States v. Galati*, 230 F.3d 254, 260 (7th Cir. 2000). There is no indication that the slight variations in the photographs had any bearing on K.D.'s identification. She stated that she was "100% certain" in her identification because "the face shape [was] the same and so [was] the nose, eyes, and hair color." And a review of the identification video shows that Agent Tracy conducted the procedure in a neutral manner. Although McConnell was in the room, her presence did not influence K.D.'s identification – she sat on the floor away from K.D. and did not speak while K.D. reviewed the photo array.

Ferris also contends that the photo array should be suppressed because HIS agents did not read all the pre-printed instructions to K.D and did not follow a "double-blind" procedure. But he does not explain why these alleged deviations were so impermissibly suggestive as to warrant suppression. *See United States v. Johnson,* 745 F.3d 227, 229 (7th Cir. 2014) (the Supreme Court has not adopted a rule that only the best approach may be used).

Having concluded that HSI agents did not utilize suggestive and unnecessary identification procedures, the Court need not address the reliability prong of the analysis. In sum, "a very

substantial likelihood of *irreparable* misidentification" has not been demonstrated in this case. Accordingly, Defendant Michael Ferris' Motion to Suppress Identification (Doc. 72) is **DENIED**.

**IT IS SO ORDERED.**
**DATED: August 8, 2022**

**STACI M. YANDLE**
**United States District Judge**