IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 20-CR-40105-SMY |
| | ) |
| MICHAEL A. FERRIS, | ) |
| | ) |
| Defendant. | ) |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

The United States of America, by Rachelle Aud Crowe, United States Attorney for the Southern District of Illinois, and Alexandria M. Burns and Luke J. Weissler, Assistant United States Attorneys for said district, hereby provides its sentencing analysis and recommendation.

**I. INTRODUCTION**

In deciding the appropriate sentence to impose, the sentencing court must consider the factors set forth in Title 18, United States Code, Section 3553:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

The Court must also consider the kinds of sentences available and the applicable category of offenses and category of defendant, as set forth in the Guidelines and its policy statements, as well as the need to avoid unwarranted sentencing disparities and to provide restitution to victims.

1

18 U.S.C. § 3553(a)(3)-(7). Having analyzed these factors, the government respectfully recommends that a reasonable and appropriate sentence in this case is a total sentence of 1,260 months in prison.

## II. ANALYSIS OF SECTION 3553(A) SENTENCING FACTORS

### A. The nature and circumstances of Michael Ferris' offense

Michael Ferris is a sadistic online predator. In 2020, during the height of the pandemic, Ferris developed a playbook to exploit teenage girls online. To start, as a 42-year-old man, Ferris created fake Facebook accounts while living in a trailer in Mill Shoals, Illinois. He named the accounts "Christine James," "Sammy Gray," and "Sarah Mansfield." He made all three appear to be accounts run by teenage girls.

Ferris used his fake accounts to search for young girls with exploitable past trauma. He joined Facebook support groups for abuse survivors and LGBTQ+ teens. He sent unsolicited messages to hundreds of girls online. First, he tried to coerce them into confiding in his fake online personas – asking probing questions and for personal photos under the guise of a peer looking for new friends with shared experiences. Then, after he gained their trust, Ferris flipped from friend to extortionist – threatening to divulge his victims' photos and secrets to their parents or police if they didn't comply with his sexually charged demands.

Ferris forced victims to do unspeakable acts to themselves and others while he hid behind a darkened screen and instructed them on video chat. He led his victims to naively believe that if they just obeyed one more demand, or sent him one more photo or video, he would finally leave them alone or move on to someone else. But, according to Ferris' plan, every additional photo and sexual act only increased his ransom to demand more extreme compliance. Ferris preyed upon his

victims' youthful fears and past abuse for callous pleasure.

Arguably most disturbing, Ferris often followed through with his threats even when his teenage victims complied with his every demand and begged to be left alone. For example, despite one teen victim's compliance, Ferris took a video of the victim being sexually abused by her stepdad and sent the video to the victim's minor boyfriend to ruin their relationship. Ferris included a taunting message, "That's what your girlfriend does when you're not with her." Ferris sent the same video to the minor boyfriend's father.

The impact of Ferris' coercive crimes is not only devastating but long lasting. At trial, Ferris listened to eight of his teenage victims and three parents testify. They traveled from across the country to bravely recount the trauma they endured and continue to experience today. Several victims described contemplating suicide after Ferris stalked and extorted them online. One mom found her daughter with slit wrists. Another mom said that even two years later, her daughter still "doesn't feel safe even when she is safe." Ferris exploited these vulnerable girls, who thought they found an online safe space to address their trauma or make friends during a global pandemic. He targeted and terrorized them.

After listening to his victims testify, Ferris waived his right to silence and chose to testify himself. Then, he obstructed justice by lying under oath. He lied to discredit his victims' experiences. He lied to shift blame to an innocent man. He lied hoping to create doubt where there was none. Ferris has shown no remorse. He deserves no breaks or pity.

Ferris' harm was not limited to the 8 victims who testified at trial. Evidence contained within Ferris' fake accounts establish a pattern of behavior that reached hundreds of purported minors in multiple countries over a 7-month period. He juggled chats with as many different

victims as he could. He pushed each one as far as possible while sending unsolicited messages to new girls in case one would stop responding. Law enforcement identified 1,890 separate message threads within a 2-month period in the Sammy Gray account. Within the Sarah Mansfield account, law enforcement identified approximately 30 conversations discussing bullying and showering – topics used by Ferris like a script across all his accounts to gain his victims' trust. Ferris was using his Sarah Mansfield account to message multiple girls within hours of federal agents executing a search warrant at his home.

Agents in the U.S. and overseas identified and contacted approximately 21 minor victims that did not testify at trial. Those victims included A.T. in Australia. A.T. was contacted by local authorities but refused to cooperate. However, Australian authorities identified A.T. as a minor living in government care due to prior abuse she experienced. Ferris' messages with A.T. show that A.T. disclosed her abuse and living situation yet Ferris still requested pictures and live video of her genitals and masturbation. Those requests were followed by manipulation and threats by Ferris to share the explicit content with others. Similarly, K.B., a 15-year-old in Minnesota, was also identified by police. K.B. had developmental delays and chats showed K.B. disclosed to Ferris prior abuse by a now deceased sibling, which Ferris swiftly used against K.B. G.M., an 11-year-old in North Carolina, was contacted by Ferris and questioned about abuse by her stepfather, and then subsequently extorted with those conversations for sexual photos and videos.

Statistically speaking, the pandemic had unprecedented impacts on suicide attempts in teen girls. *See The Center for Disease Control Youth Risk Behavior Survey Data Summary & Trends Report: 2011-2021,* https://www.cdc.gov/healthyyouth/data/yrbs/pdf/YRBS_Data-Summary-Trends_Report2023_508.pdf, last accessed April 7, 2023. In 2021, the CDC reported that 30% of

4

female students "seriously considered attempting suicide" in the past year, and 45% of LGBTQ+ students seriously contemplated suicide. *Id.* at 63. Michael Ferris specifically targeted these vulnerable teens. Through his extortion, he was successful in pushing more than one of his victims towards attempted suicide. Ferris' potential lasting impact on his victims' mental health, social interactions, trust, future relationships, and self-worth is immeasurable.

Several victims who testified described the impact that Michael Ferris made on their lives in the following ways:

> "I felt that I couldn't leave the house without feeling unsafe and distrusted everyone, including my online friends whom I felt I could no longer talk to out of fear of repeating the same experience. I spiraled into a deep depression which lasted for four years, I lost interest in activities that I used to enjoy, and the once-confident person I used to be no longer existed. I was even suicidal for a year and a half, the only reason I kept going was for my family and the few real friends I had, and to see the day he finally got caught and I wouldn't have to be afraid anymore. For years I struggled to regain my confidence and rebuild my life."  -Ivory M. (See Exhibit 1).
>
> "Experiencing what he did made me think that it was normal to do these things with people I had a feeling it was wrong and I didn't like doing it but I felt like I had to…" -Jasmine W. (See Exhibit 2).
>
> "I felt like if I was dead than he couldn't mess with me anymore…made me feel like I could trust very few people, terrified to go outside or anywhere, I felt like he was going to come take me from my family…" -Autumn S. (See Exhibit 3)
>
> "What this man did has mentally scarred me. He took advantage of me in a time I was already breaking. What he did made that time in my life harder than it should have…I suffer with a mental scar from it such as trust issues, low confidence, and depression."   -Kendra D. (See Exhibit 4).

*See Additional Statements filed under separate cover as Sealed Exhibits 1-7.*

    **B.  The history and characteristics of Michael Ferris**

Michael Ferris is a 44-year-old man who, when questioned for the pre-sentence report, denied drug or alcohol abuse or abuse as a child. Ferris disclosed a history of anxiety and

depression, something he had in common with many of his minor victims, which he preyed upon and exacerbated. Ferris did not graduate from high school or earn his GED. He disclosed attending some online education through Ashford University and Phoenix University. Ferris also disclosed that he had a close relationship with his family growing up, though he currently does not maintain contact with anyone.

History about Michael Ferris from witnesses who testified at trial depict a man who had been taken in, supported, and allowed to live rent free by a friend from childhood and her husband. No one, including Ferris himself, reported struggles with drugs, alcohol, or any other mind-altering substance at the time of these offenses. Ferris reported no prior abuse as a child. Simply put, there has been no explanation or mitigation provided for Ferris' sadistic behavior. Ferris is a person who enjoyed targeting the most vulnerable children he could find. He reveled in the power he could exert over them. Numerous conversations involved Ferris posing as law enforcement threatening to get victims in trouble or orphan them from their families if they didn't obey his commands. He relished in their fear, as much or more so than the sexual acts he forced them to perform. And all of this occurred during a time when children around the world were stuck inside during a global pandemic, away from friends and schools, and turning to connections on the internet instead. Michael Ferris exploited this situation in a depraved, cruel, and relentless manner.

### C. The Goals of Sentencing and Michael Ferris

The goals of sentencing include the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). The seriousness of the crimes that Michael Ferris committed are undeniably

6

serious. Michael Ferris' actions throughout this offense and trial demonstrate that he *cannot* and *will not* be deterred. Ferris, after listening to victim after victim recount the horrors of his abuse, took the stand to testify in his own defense. Ferris then attempted to pin his horrific actions on an uninvolved and innocent man. Ferris demonstrated he will stop at nothing, including perjuring himself in front of the Court, to deny his behavior. Michael Ferris is calculated and conniving, and old age, sex offender registration, or other restrictions cannot stop his methodical and calculated behavior. The only available tool to protect the public from Michael Ferris continuing to target and mentally torture children is extensive incarceration.

The sentencing guidelines calculate Ferris' range at 3,432 months imprisonment. Section § 2G2.2 Application Note 8 supports an upward departure if the offense involved more than 10 minors. These guidelines recognize the immense harm that Michael Ferris has caused and the significant threat he remains. They justify a sentence that guarantees Michael Ferris cannot access new victims or reoffend in his lifetime. The United States submits that a significant sentence that removes Ferris' access to the internet and child victims indefinitely is necessary and has fashioned a sentence that reflects the harm he has done to each of the victims involved in the charged case. Michael Ferris' choice to torment each victim individually is deserving of commensurate individualized punishment. To justly punish Michael Ferris, and to protect the public from future crimes of the defendant, the United States requests that each count per victim be run consecutively to every other victim to account for each individual harm he caused.

### III.   CONCLUSION

Pursuant to the factors set forth in 18 U.S.C § 3553(a), and all the facts and circumstances of the case, the United States respectfully recommends that Michael A. Ferris be sentenced to a

total of 1,206 months as follows:

    **H.M.:**
    Count 1: 15 years to run consecutive to all other counts
    Count 2: 5 years to run concurrent to all other counts
    Count 3: 2 years to run concurrent to all other counts
    Count 4: 5 years to run concurrent to all other counts

    **I.M.:**
    Count 5: 2 years to run concurrent to all other counts
    Count 6: 5 years to run consecutive to all other counts

    **K.B.:**
    Count 7: 15 years to run consecutive to all other counts
    Count 8: 2 years to run concurrent to all other counts
    Count 9: 5 years to run concurrent to all other counts

    **J.W.:**
    Count 10: 15 years to run consecutive to all other counts
    Count 11: 2 years to run concurrent to all other counts
    Count 12: 5 years to run concurrent to all other counts

    **K.C.:**
    Count 13: 15 years to run consecutive to all other counts
    Count 14: 2 years to run concurrent to all other counts
    Count 15: 5 years to run concurrent to all other counts

    **A.S.:**
    Count 16: 2 years to run concurrent to all other counts
    Count 17: 5 years to run consecutive to all other counts

    **S.M.:**
    Count 18: 2 years to run concurrent to all other counts
    Count 19: 5 years to run consecutive to all other counts

    **K.D.:**
    Count 20: 15 years to run consecutive to all other counts
    Count 21: 5 years to run concurrent to all other counts
    Count 22: 2 years to run concurrent to all other counts
    Count 23: 5 years to run concurrent to all other counts

    **H.N.:**
    Count 24: 15 years to run consecutive to all other counts
    Count 25: 5 years to run concurrent to all other counts

Respectfully submitted,

RACHELLE AUD CROWE
United States Attorney

*/s/ Alexandria M. Burns*
ALEXANDRIA M. BURNS
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, Illinois 62208
(618) 628-3700 telephone
Email: alexandria.burns@usdoj.gov


*/s/ Luke J. Weissler*
LUKE J. WEISSLER
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, Illinois 62208
(618) 628-3700 telephone
Email: luke.weissler@usdoj.gov